Sanford, J.
The first question presented in this case is, whether, upon an application to the court of probate for the appointment of a conservator, made by the relatives of the “ incapable person,” the judge of the district in which the application is made is disqualified because he is one of the selectmen of a town embraced in the district—the selectmen of such town being made parties to the application, and duly summoned as the law requires.
The sixtj'-first section of the statute relating to courts, (Rev. Stat., tit. 5,) provides that whenever any judge of probate’shall, by reason of relationship, interest, or other cause be disqualified, the judge of probate of an adjoining district shall act *in his stead, unless, &c. And the second section of [ *271 ] the act concerning idiots, lunatics and spendthrifts, (Rev. Stat., tit. 25,) provides that, whenever the application for the appointment of a conservator shall be made by the relatives of any incapable person, the selectmen of the town in which the respondent resides shall be made parties thereto, and some one of them shall be notified of the time of hearing such application.
Selectmen are, for most purposes, the agents of the town and the guardians of its treasury, appointed (in the language of an ancient statute) “ to take care of and order its prudential affairs,” (Stat. ed. 1808, p. 6.49,) as well as to inspect the conduct and management of all persons residing in it, with an especial refer* *222 ence to the protection of the town ¿gainst liability for the maintenance of persons reduced to want. It is not without good reason, therefore, that the legislature have'required that, when the selectmen are not themselves the applicants for the appointment, they shall be made parties to the application and notified of the time of its being heard, in order that they may see to it that the interests of the corporation which they represent shall not be injuriously affected, or jeopardized by an uncalled for appointment, or an unfit appointee.-
The selectmen then being parties representing the interests of the town, Judge Hull, if he had not declined, would have been in his court of probate, representing interests’in conflict with the interests, either of the applicants or respondent, or of both of them; and the extraordinary spectacle would have been exhibited, of an individual, in the character of a party in court, contesting a claim upon which as judge of that'court it was his duty to decide. It would be shocking to all our notions in regard to judicial dignity, impartiality and decorum, to witness, in the same person, at the same time, the exercise of functions so incongruous and incompatible.'
In our opinion Judge Hull, though not on account of relationship or interest, yet for the “ other cause ” that he was a select man of the town, and therefore necessarily a party, [ *272 ] *was disqualified to act as judge on the hearing of the application, and did right in declining. And no other objection to the acting of Judge Clark being taken, the original appointment of the conservator was legally made.
The next question is, whether the court of probate had authority to accept and record the conservator’s account after the revocation of his appointment.
No question is made in regard to the items of that account or the regularity of the conservator’s proceedings prior to the revocation. And the court of probate merely accepted the account and ordered it to be recorded, but made no other order or decree regarding it.
The effect of such ’a proceeding upon the ultimate rights or remedies of' the conservator and the ward need not now be determined. And we have no occasion to call in question the doctrine of the case of Norton v. Strong, 1 Conn., 70, cited on the argument, the only point decided in that case being, that the conservator was n'ot the owner of produce' raised on the ward’s farm and remaining on hand at the death of the ward, and had no lien upon it for the-balance of his account, and, consequently, that a duly'authenticated copy of the conservator’s' account, which had been examined, allowed and lodged on file by the *223 court of probate after the ward’s death, was not admissible evidence on the trial of an action of trover against the ward’s executor, to prove such ownership or lien, although the account contained a credit for the produce and showed a balance still due to the conservator.
The whole scope and structure of the statute now in operation, indicates the intention of the legislature to vest the power in, and make it the duty of the court of probate to liquidate and adjust the conservator’s account. Thus, the first section provides that the conservator shall give bond with surety, payable to the judge of probate and his successors in office, for the faithful discharge of his trust. The third, that he shall make and return to that court a true and perfect inventory of the ward’s estate; and render to said court his account of the management of his trust when thereto required ; and shall be allowed a reasonable compensation *for his services. [ *278 J The fourth, that he shall manage the estate in a husbandlike manner, and apply the annual income and profits thereof to support the ward and his family; that he may collect all debts due to the ward, and adjust and settle all accounts and debts due from him, and may sell or dispose of the personal estate of the ward to pay his debts and support him and his family. The fifth, that if the annual income of his estate shall be insufficient to support the ward and his family and to pay his debts, the court of probate, on application of the conservator, shall liquidate the debts due such person, and thé expenses of his support, and, if it shall find the personal estate insufficient to discharge the same, may order the sale of the real estate, and empower the conservator or some other person to sell and convey the same, the party so empowered first giving bond to dispose of the proceeds under the direction of the court and to render his account to said court when required. The sixth, that when the ward shall be restored to his capacity, what remains of his estate shall be returned to him, or in case of' his death to his heirs, &c., after a reasonable allowance to the conservator for his services, to be ascertained and allowed by the court of probate. And the ninth, that every conservator shall annually render to the court of probate his account with his ward, containing the particulars and stating the situation of the estate, and that the settlement of all accounts of conservators appointed by the county court before the passing of the act, shall be made before the court of probate, &c.
But to what purpose is the conservator to render his account to the court of probate if that court has no authority to examine, liquidate and allow it ? The conservator is entitled to *224 a reasonable compensation for his services out of the funds in his hands, at the death of the ward or the restoration of his capacity, and the amount of it can be ascertained only upon an examination of his account, and allowed only by the court to which that account is rendered. And as in the case of the ward’s death, or the restoration of his capacity, so upon the removal or resignation of the conservator, the court of probate [ *274 ] seems the peculiarly appropriate tribunal for *the examination, adjustment and settlement of his account. In the latter cases as in the former, the conservator, if he has conducted fairly, is justly entitled to a reasonable compensation for his services, and, by an obvious analogy, the amount should in both cases be ascertained in the same way, and settled by the same authority. And besides, the obligee in the bond, whose duty it'may be to enforce the same by suit, ought to be informed, by the rendition of the conservator’s account, in what manner his duties have been performed and what is the condition of the estate.
We are aware of the case of Butts v. Spalding, 5 Conn., 427, but we find nothing in the determination in that case in conflict with the opinion above expressed. The Chief Justice indeed says that the county court had no jurisdiction to settle a conservator’s account after the conservator’s death. But the only point decided was, that the action of the county court, in the settlement of a conservator’s account after his decease, was not a judgment upon which an action of debt could be maintained by the ward, to recover the balance found due to him upon such settlement. No such question arises in this case.
No sufficient cause is shown for the reversal of the decree of the court of probate, and we therefore advise the superior court that it be affirmed.
In this opinion the other judges concurred
Probate decree affirmed.